## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| HANOVER ATLANTIC COMPANY LTD., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | )   Case No. 1:26-cv-02762 |
| | ) |
| FIRENZE GROUP, LLC, BRADDOCK ROAD, | ) |
| LLC, SEAL HARBOR PARTNERS, LLC, SUNG | ) |
| IL MOON, DAVID J. PERLSTEIN, and | ) |
| WILLIAM J. PERLSTEIN, | ) |
| | ) |
| Defendants. | ) |

### COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff Hanover Atlantic Company Ltd. ("Hanover") files this Complaint for Declaratory Judgment against Defendants Firenze Group, LLC ("Firenze"), Braddock Road, LLC ("Braddock"), Seal Harbor Partners, LLC ("Seal"), Sung Il Moon ("Sung"), David J. Perlstein ("David"), and William J. Perlstein ("William"), stating as follows.

### NATURE OF THE ACTION

1.      This is an insurance coverage action seeking declaratory relief pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure.

2.      Hanover seeks a declaration that the Asset Manager Advantage Policy No. H 796995 02 for the October 15, 2022 to October 15, 2023 **Policy Period** (the "Policy"),[1] a true and correct copy of which is attached as Exhibit 1, does not provide any additional coverage (beyond the amount Hanover has already paid) in connection with a lawsuit filed by Good Hope Urbanite Premium Linked Fund, LLC ("Good Hope") against Firenze, Braddock, Seal, Sung, and David,

---

[1] Terms in bold are defined in the Policy.

styled *Good Hope Urbanite Premium Linked Fund, LLC v. Braddock Road, LLC, et al.*, No. CGC-23-605848, filed in the Superior Court of California, San Francisco County (the "Underlying Lawsuit").

3.      A dispute exists as to whether Hanover is obligated under the Policy to further indemnify Firenze, Braddock, Seal, Sung, David, and/or William for the settlement of and/or additional defense costs incurred in connection with the Underlying Lawsuit. As a result of this dispute, there is an actual case or controversy between the parties.

## PARTIES

4.      Hanover is a Bermuda corporation, for which the claim handling of the Underlying Lawsuit was based in Illinois.

5.      Upon information and belief, Firenze is a Delaware LLC with its principal place of business in Arlington, Virginia.  Also upon information and belief, Firenze's members are Sung and David.

6.      Upon information and belief, Braddock is a Delaware LLC with its principal place of business in Arlington, Virginia.  Also upon information and belief, Braddock's members are Firenze and Rehoboth Beach Ventures, LLC, a Delaware LLC, whose member is William.

7.      Upon information and belief, Seal is a Delaware LLC with its principal place of business in Arlington, Virginia.  Also upon information and belief, Seal's member is Firenze.

8.      Upon information and belief, Sung is a resident and citizen of Virginia.

9.      Upon information and belief, David is a resident and citizen of Virginia.

10.      Upon information and belief, William is a resident and citizen of Delaware.  Also, upon information and belief, as of June 12, 2025, Sung, David, Firenze, Braddock, and Seal assigned to William their rights to any and all proceeds under the Policy in connection with the

Underlying Lawsuit, and therefore he has an interest as to whether Hanover has a duty to further indemnify Firenze, Braddock, Seal, Sung, David, and/or William in connection with the Underlying Lawsuit.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction over this proceeding pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between (1) Hanover and (2) the Defendants, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

12.     This Court has personal jurisdiction over Defendants because they have conducted business in Illinois with respect to the matter at issue in this action.

13.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to the coverage dispute occurred in this district.

## FACTUAL BACKGROUND

*The Underlying Lawsuit*

14.     On April 14, 2023, Good Hope filed a complaint against Firenze, Braddock, and Seal (which Good Hope identified collectively as "Guarantor Defendants" or "Guarantors"), asserting three causes of action for breach of contract. The first notice of the complaint was provided to Hanover in October 2023.

15.     Good Hope later filed a first amended complaint, followed by a second amended complaint ("SAC") filed on October 21, 2024, which included David and Sung as additional defendants. A copy of the SAC is attached as Exhibit 2.

16.     The SAC included the following allegations.

  a.   "At the urging of Guarantors, and in express reliance on their promise to stand responsible to repay the investment," Good Hope "invested $12 million into

non-party Lechunza, LLC" with respect to an investment in a Chicago, Illinois office building. Ex. 2 ¶¶ 1, 42; *see also* Exhibit B of Ex. 2.

b. "Guarantors guaranteed the payment and performance by their affiliate, non-party Cape Charles Group, LLC … to redeem [Good Hope's] investment into [Lechunza, LLC], by entering into a written Guaranty Agreement effective July 31, 2019 (the 'Guaranty') …." Ex. 2 ¶ 1.

c. "[T]he Guaranty required Guarantors to provide [Good Hope] with certain financial reports, and Guarantors promised to do so." Ex. 2 ¶ 3.

d. "The purpose of these financial reports was, among other things, to provide [Good Hope] with information regarding Guarantors' compliance with their obligations to maintain the required levels of Liquidity and Net Worth, and hence information regarding Guarantors' ability to perform their financial obligations under the Guaranty. Despite demand, Guarantors failed and refused to provide the required financial reports and continue to fail and refuse to provide the required financial reports." Ex. 2 ¶ 3.

e. Good Hope "discovered that both the Guarantor Defendants and the Individual Defendants had committed fraud through misrepresentations and false promises." Ex. 2 ¶ 8.

f. "On July 31, 2024, … the Guarantor Defendants breached their Guaranteed Obligations by not paying the sums due under the Guaranty." Ex. 2 ¶ 8.

g. "Defendants' actions were willful, deliberate, despicable, malicious, fraudulent and undertaken with such a complete disregard for the rights of [Good Hope]

as to warrant the imposition of punitive damages, according to proof." Ex 2 ¶ 40.

17.     The SAC's First Cause of Action was asserted against the Guarantors for "Breach of Written Contract (Financial Reporting)," alleging that they "failed and refused to provide the Financial Statements and certificates required by … the Guaranty…." Ex. 2 at p. 6, ¶ 23.

18.     The SAC's Second Cause of Action was asserted against the Guarantors for "Breach of Written Contract (Reimbursement of Legal Expenses)," alleging that they "breached the Guaranty insofar as, despite demand, they have failed and [sic] to remit payment to [Good Hope] of the amounts due under section 1.9 of the Guaranty," i.e., "all costs and expenses (including court costs and reasonable attorneys' fees) incurred by [Good Hope] in the enforcement hereof or the preservation of [Good Hope's] rights hereunder." Ex. 2 at p. 7, ¶¶ 31-32.

19.     The SAC's Sixth Cause of Action was asserted against the Guarantors for "Breach of Contract – Failure to Maintain Required Levels of Net Worth and Liquidity[.]" Ex. 2 at p. 14. Good Hope alleged that "Guarantors have failed to maintain the required levels of Net Worth and Liquidity [in Section 1.13 of the Guaranty]. [Guarantors] have thereby breached the Guaranty." Ex. 2 ¶¶ 58-59.

20.     The SAC's Seventh Cause of Action was asserted against the Guarantors for "Breach of Contract – Failure to Pay Guaranteed Obligations" because "under the Guaranty … the Guarantors owed [Good Hope] as Guaranteed Obligations the principal amount of at least $14,443,225.81 as of July 31, 2024, exclusive of other charges claimed by [Good Hope] such as Late Fees … and interest …." Ex. 2 at p. 15, ¶ 66.  The Guarantors did not pay the Guaranteed Obligations owed.

21.     The SAC's Third Cause of Action was for "Fraud in the Inducement," quoting the Guaranty's Financial Condition Representation in Section 3.4 and alleging that such "Financial Condition Representation was false when made …." Ex. 2 at p. 8, ¶¶ 37-38.

22.     The SAC's Fourth Cause of Action was for "False Promise," quoting the Guaranty's Net Worth/Liquidity provision in Section 1.13 and Financial Reporting provision in Section 1.14, and alleging "that, at the time of making these promises, each Guarantor … did not intend to honor them; and that each Guarantor … intended that [Good Hope] rely on the promises and made the promises specifically to induce [Good Hope] to make the $12 million investment referenced in the Guaranty." Ex. 2 at p. 12, ¶¶ 44-47.

23.     The SAC's Fifth Cause of Action for "Negligent Misrepresentation" alleged "that the Financial Condition Representation [in Section 3.4 of the Guaranty] referenced in paragraph 37 above was false when made; that, although each Defendant may have honestly believed that the representation was true, they had no reasonable grounds for believing the representation was true when they made it; and that each Defendant intended that [Good Hope] rely on the representation and made the representation specifically to induce [Good Hope] to make the $12 million investment referenced in the Guaranty." Ex. 2 ¶ at p. 14, 52.  This cause of action specifically incorporated by reference the allegations, among others, in paragraphs 8 and 42, which included allegations that defendants committed fraud.  *See* Ex. 2 ¶¶ 51, 8, 42.

24.     Before Sung and David were added as individual defendants to the Underlying Lawsuit, Good Hope's counsel issued a letter dated December 22, 2023, stating that Sung and David would be added as defendants because they "Are Personally Liable for Fraud … because they were the primary actors in the fraud." This December 22, 2023 letter is attached as Exhibit 3.

25.     The December 22, 2023 letter details why the elements of fraud were allegedly satisfied. *See* Ex. 3.

26.     The court in the Underlying Lawsuit issued an order dated August 14, 2024 (the "Order"). The Order is attached as Exhibit 4.

27.     The Order states in part: "A central issue is whether [Good Hope] will prevail on its cause of action for fraudulent inducement"; and "It is very likely [Good Hope] will prove all [the] elements" for such cause of action. Ex. 4 at p. 2.

28.     The Underlying Lawsuit was settled by Good Hope and all defendants in or around June 2025.

*The Policy*

29.     Hanover issued the Policy to Firenze. The Policy includes a Directors & Officers and Entity Liability Coverage Part ("D&O Part"). *See* Ex. 1.

30.     The Policy states that Hanover "does not assume any duty to defend any **Claim**." Ex. 1, Common Policy Terms and Conditions, Section VI.A.

31.     The D&O Part includes an exclusion that applies to Insuring Agreement C. Corporate Entity Liability only and states in pertinent part:

This insurance does not apply to **Loss** for any **Claim**:[2]

1.     Contract

For any liability assumed through, or on account of, any express contract or agreement to which an **Insured** is a party including but not limited to express warranties, guarantees, indemnification agreements and any fines or penalties for breaches of such contract or agreement; however, this exclusion shall not apply to liability that would have attached in the absence of such contract or agreement ....

---

[2] The term **Loss** includes **Defense Expenses**, settlements, etc.; the term **Claim** includes a civil proceeding commenced by the service of a complaint. *See* Ex. 1, D&O Part, Section III.

Ex. 1, D&O Part, Section IV.B.1 (the "Contract Exclusion").

32.    The D&O Part also includes an exclusion that applies to all Insuring Agreements and states in pertinent part:

> This insurance does not apply to **Loss** for any **Claim**:
>
> \*       \*       \*
>
> 3.    <u>Conduct</u>
>
> Based upon, arising out of or in any way related to:
>
> a.    Any deliberate, dishonest, fraudulent act or omission, or willful violation of any statute or regulation by an **Insured**; or
>
> b.    An **Insured** gaining any profit, remuneration or advantage to which such **Insured** was not legally entitled;
>
> However, this exclusion shall not apply to:
>
> c.    **Defense Expenses** unless and until a final, non-appealable judgment or adjudication in the underlying proceeding or action establishes that an **Insured** committed such an act or omission, violation of statute or regulation or gained such profit, remuneration or advantage to which the **Insured** was not legally entitled.

Ex. 1, D&O Part, Section IV.A.3 (the "Conduct Exclusion").

*The Coverage Dispute*

33.    After Good Hope filed the Underlying Lawsuit, Firenze, Braddock, and Seal sought coverage for that lawsuit under the Policy.

34.    After Sung and David were added as defendants in the Underlying Lawsuit, they also sought coverage for that lawsuit under the Policy.

35.    Due to the carve-out in the Conduct Exclusion, Hanover paid **Defense Expenses** for Sung and David.  Otherwise, Hanover denied coverage for the Underlying Lawsuit under the Policy based on the Contract Exclusion and the Conduct Exclusion.

36.     Hanover disputes that coverage for the Underlying Lawsuit is afforded under the Policy because the Contract Exclusion and the Conduct Exclusion preclude coverage for that suit, except for **Defense Expenses** for Sung and David, which Hanover has already paid.

**COUNT I**
**DECLARATORY JUDGMENT**
**(The Contract Exclusion Precludes All Coverage For Firenze, Braddock, and Seal, as well as Their Assignee William.)**

37.     Hanover repeats and incorporates the allegations contained in Paragraphs 1 through 36 above as if fully set forth herein.

38.     The Contract Exclusion precludes coverage of "**Loss** for any **Claim** … [f]or any liability assumed through, or on account of, any express contract or agreement to which an **Insured** is a party including but not limited to express … guarantees …." Ex. 1, D&O Part, Section IV.B.1.

39.     All of the allegations and counts asserted against Firenze, Braddock, and Seal in the Underlying Lawsuit are for liability assumed through and/or on account of an express contract/guaranty. *See* Ex. 2.

40.     Thus, the Underlying Lawsuit is a **Claim** for liability assumed through and/or on account of an express contract to which an **Insured** is a party including but not limited to an express guaranty.

41.     Therefore, Hanover is entitled to a declaration that it does not have any duty to indemnify Firenze, Braddock, Seal, and their assignee William under the Policy in connection with the Underlying Lawsuit because coverage under the Policy is precluded by the Contract Exclusion.

## COUNT II
## DECLARATORY JUDGMENT
**(The Conduct Exclusion Precludes Indemnity Coverage For Sung and David, as well as Their Assignee William.)**

42.　　Hanover repeats and incorporates the allegations contained in Paragraphs 1 through 36 above as if fully set forth herein.

43.　　The Conduct Exclusion precludes coverage of "**Loss** for any **Claim** … [b]ased upon, arising out of or in any way related to … [a]ny deliberate, dishonest, fraudulent act or omission … by an **Insured** …." Ex. 1, D&O Part, Section IV.A.3.

44.　　The Underlying Lawsuit included causes of action for fraud in the inducement, false promise, and negligent misrepresentation, all of which included or incorporated allegations of fraud. *See* Ex. 2.

45.　　The Underlying Lawsuit alleged that Defendants "committed fraud through misrepresentations and false promises." Ex. 2 ¶ 8.

46.　　The Underlying Lawsuit alleged that "Defendants' actions were willful, deliberate, despicable, malicious, [and] fraudulent …." Ex. 2 ¶ 40.

47.　　Good Hope's counsel issued a letter dated December 22, 2023, stating "Mr. [Sung] Moon and Mr. [David] Perlstein Are Personally Liable for Fraud … because they were the primary actors in the fraud." Ex. 3.

48.　　The court in the Underlying Lawsuit issued the Order, which states in part: "A central issue is whether [Good Hope] will prevail on its cause of action for fraudulent inducement"; and "It is very likely [Good Hope] will prove all [the] elements" for such cause of action. Ex. 4 at p. 2.

10

49.     Accordingly, the Underlying Lawsuit is a **Claim** based upon, arising out of, and/or in any way related to any deliberate, dishonest, fraudulent act or omission, and is subject to the Conduct Exclusion.

50.     Hanover paid **Defense Expenses** for Sung and David.

51.     Therefore, Hanover is entitled to a declaration that it does not have any duty to further indemnify Defendants in connection with the Underlying Lawsuit because any additional coverage under the Policy is precluded by the Conduct Exclusion.

## <u>PRAYER FOR RELIEF</u>

Hanover Atlantic Company Ltd. requests that judgment be entered in its favor as follows:

A.     Declaring that Hanover does not have any duty under the Policy to indemnify Firenze, Braddock, and Seal, in connection with the Underlying Lawsuit;

B.     Declaring that Hanover does not have any duty under the Policy to further indemnify Sung and David in connection with the Underlying Lawsuit; and

C.     Declaring that Hanover does not have any duty under the Policy to indemnify assignee William in connection with the Underlying Lawsuit.

D.     For such other and further relief as the Court deems just and proper.

Dated: March 11, 2026

Respectfully submitted,

**WALKER WILCOX MATOUSEK LLP**

By: /s/ Alla Cherkassky Galati
Alla Cherkassky Galati (#6316595)
Paul F. Matousek (#6196131)
Christopher A. Wadley (#6278651)
agalati@walkerwilcox.com
pmatousek@walkerwilcox.com
cwadley@walkerwilcox.com
One North Franklin Street, Suite 3200
Chicago, IL 60606-3610
Telephone: (312) 244-6700

Attorneys for **HANOVER ATLANTIC COMPANY LTD.**